**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| CLARA GARCIA EGUIZABAL, | * |
| Plaintiff, | * |
| v. | * Civil Case No.: PWG-17-614 |
| HU AND TAN, INC., ET AL., | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

On March 3, 2017, Plaintiff Clara Garcia Eguizabal filed this action against her former employers, Hu and Tan, Inc., doing business as New Village, and 58Unity, LLC, also doing business as New Village, and their owner-operators (collectively "New Village") alleging that New Village failed to pay her minimum wages and overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 to 3-430. Am. Compl. ¶¶ 1–2, ECF No. 18. In addition, the Complaint alleges that New Village's failure to pay minimum wages and overtime compensation also violated the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 to 3-509. *Id.* ¶ 2. On December 19, 2017, the parties jointly moved for court approval of the settlement agreement they have executed. Jt. Mot. & Mem., ECF No. 43. I find the net amount Eguizabal is to receive to be fair and reasonable in light of the facts of this case. Additionally, I approve the attorneys' fee award under a lodestar calculation.

I.   BACKGROUND

Eguizabal worked in the kitchen at New Village from approximately July 29, 2015 to November 16, 2016. Am. Compl. ¶ 11. Plaintiff alleges that New Village paid her hourly wages between $4.89 and $5.57 during her tenure and typically required her to work sixty-six hours per week. *Id.* ¶¶ 26–35. Eguizabal also alleges that she typically worked eleven hour days and occasionally worked every day in a given week. *Id.* ¶¶ 31, 33. Plaintiff alleges that she was owed approximately $29,199.70 in uncompensated overtime and minimum wages.

The Settlement Agreement: "release[s] . . . and forever discharge[s] Current and Former Defendants . . . from all and every manner of action . . . which the Plaintiff ever had, now has, or hereafter can, shall, or may have against Current and/or Former Defendants . . . . This release also includes any claim for attorney's fees." Agreement ¶ 5(a), ECF No. 43-1. The Agreement provides for litigation costs and attorneys' fees. Jt. Mot. & Mem. 5. The parties have agreed to settle this case for $17,400 based on the following terms: "Current Defendants" are to pay Eguizabal $7,600.00 in wage-based and liquidated damages; "Former Defendants" are to pay Eguizabal $2,400.00 in non-wage based damages; and "Current Defendants" are to pay Eguizabal's attorneys, DCWAGELAW, $7,400.00 in fees and costs.[1]  Agreement ¶ 4.

II.  DISCUSSION

   a. FLSA Settlement Generally

Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees. To that end, the statute's provisions are mandatory and generally are not subject to bargaining,

---

[1] In the agreement, "Current Defendants" is defined as Hu and Tan, Inc., 58Unity, LLC, Hui Tan, and Shiu Wong, and Former Defendants is defined as Dan Feng Hu and Guo Zhi Ye. Agreement 1.

waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Court-approved settlement is an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

Although the Fourth Circuit has not addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Id.* at *3 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)). The settlement must "reflect a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions," which includes findings with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement. *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)). These factors are most likely to be satisfied where there is an "assurance of an adversarial context" and the employee is "represented by an attorney who can protect [her] rights under the statute." *Lynn's Food Stores*, 679 F.2d at 1354.

### b. *Bona Fide* Dispute

In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the

3

proposed settlement agreement. *See Lomascolo*, 2009 WL 3094955, at *16–17. The Joint Motion and Memorandum makes clear that several issues are in *bona fide* dispute. Most importantly, the parties disagree about whether any violations occurred and which if any of the current and former Defendants were responsible for said violations.

### c. Fairness & Reasonableness

In evaluating the fairness and reasonableness of this settlement, I must consider:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff[]; (5) the opinions of class counsel . . . ; and (6) the probability of plaintiff['s] success on the merits and the amount of the settlement in relation to the potential recovery.

*Lomascolo*, 2009 WL 3094955, at *10.

First, the parties engaged in discovery of this case, however, it was not fruitful in fully determining the precise amount of money owed to Eguizabal or which of Defendants were ultimately responsible as scant records exist. Jt. Mot. & Mem. 4. Regardless, Eguizabal's counsel believes Eguizabal received all useful information that was obtainable prior to settling this matter. *Id.* With regard to the second factor, the parties state that

> [t]his was a simple wage and hour case that became unexpectedly complicated by the impossibility of determining who should be responsible for any amounts owed. Given the dollar amount in dispute—it made sense to resolve this matter before attorney's fees eclipsed the underlying amount in dispute.

*Id.* The parties have confirmed that there was no fraud or collusion and the "settlement was extremely hard won." *Id.* I accept these representations by experienced counsel and am satisfied that no fraud or collusion contributed to the parties' decision to settle the claims. Additionally, the parties have established counsel's experience with FLSA cases. *See id.* As for the fifth

factor, it is not relevant in this, as it pertains to class actions. *See Lomascolo*, 2009 WL 3094955, at *10.

With regard to the sixth factor, Eguizabal estimates her total damages to be $92,574.10, a figure that includes overtime pay, unpaid minimum wage, and liquidated damages. Am. Compl. 10–11. The bases for Eguizabal's liquidated damages claims are sections of the FLSA and MWPCL that permit enhanced recovery for, among other things, unpaid overtime wages. *See* 26 U.S.C. § 216; Lab. & Empl. § 3-507.2. If Plaintiff's estimate is reduced to exclude liquidated damages, her claim for unpaid wages equals $29,199.70. Am. Compl. 6. The settlement amount of $10,000 therefore amounts to 34.2% of the unpaid wages that Eguizabal seeks. *See* Agreement ¶ 4.

In order to secure liquidated damages, the Plaintiff would have to prove that the failure to pay the disputed wages was not the result of a "good faith" belief that the FLSA did not require such payment. 29 U.S.C. § 260. The settlement agreement takes into account that a lack of evidence may have been available, that there are *bona fide* disputes in this case and that the case may "have dragged out for quite some time, with both the current and former defendants filing Motions for Summary Judgment arguing that the other was the responsible party." Jt. Mot. & Mem. 4–5. This dispute was complicated because it was by no means certain which, if any, of the many defendants involved could have been found responsible for the alleged violations if the litigation proceeded. The agreement reached identifies six separate defendants who agree to settle this matter. Agreement 1. And even if liability could be established, the ability of the plaintiff to *collect* a judgement also was in serious doubt. Ultimately, Eguizabal's counsel, while believing Eguizabal would be successful at trial, believed "it is unlikely that Plaintiff would have ever collected much more than she will receive by way of the settlement agreement." *Id.* at 4–5.

Given the *bona fide* disputes in this case there, is a "possibility that, even if liability were found, Plaintiff may not be entitled to additional liquidated damages," *see Berrios v. Green Wireless, LLC*, No. GJH-14-3655, 2016 WL 1562902, at *3 (D. Md. Apr. 18, 2016),[2] and there is the possibility that one or both Defendants would be judgment proof if this proceeded to trial, Jt. Mot. & Mem. 5. Under these circumstances, I do not find the settlement amount unreasonable. It is not unreasonable to settle for a collectible amount instead of proceeding to trial to recover a larger, uncollectible judgment.

The Settlement Agreement contains a general release of claims beyond those specified in the Complaint. Agreement ¶ 5. A general release like this can render settlement agreements unreasonable. *See, e.g.*, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010) (concluding that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" that "fails judicial scrutiny"); *McKeen–Chaplin v. Franklin Am. Mortg. Co.*, No. 10-5243, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012). But, if the employee is compensated reasonably for the release executed, the settlement can be accepted, and I am not required to evaluate the reasonableness of the settlement as to the non-FLSA claims. *See Saman*, 2013 WL 2949047, at *5 (citing *Robertson v. Ther-Rx Corp.*, No. 09-1010-MHT, 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011); *Bright v. Mental Health Res. Ctr., Inc.*, No. 09-1010, 2012 WL 868804, at *2 (M.D. Fla. Mar. 14, 2012)). As explained above, the Agreement compensates Eguizabal for 34.2% of her claims for unpaid wages. This

---

[2] The Settlement Agreement designates $3333.34 of the settlement amount as unpaid wages and the remaining $6,666.66 as liquidated damages. Agreement ¶ 4. Nevertheless, given the existence of *bona fide* disputes among the parties, it is possible that Eguizabal would be unable to recover liquidated damages at trial. *See Berrios*, 2016 WL 145902, at *3. Irrespective of the parties' designation that the settlement covers both unpaid wages and liquidated damages, the appropriate comparison for the reasonableness inquiry is the amount of unpaid wages Plaintiff seeks compared to the total settlement amount. *See id.*

percentage fairly compensates the Plaintiff for the general release executed given the *bona fide* disputes and stage of the case.

The proposed settlement does not provide for an entry of judgment, and some courts view settlements without such a stipulated judgment as *per se* unreasonable. *See Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 410 (D. Md. 2014) (citing, *inter alia*, *Lynn's Food Stores*, 679 F.2d at 1353; *Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012)). But *Brooklyn Savings v. O'Neil*, 324 U.S. 697 (1945), on which these courts rely, did not "involve[] a settlement executed between an employer and employee as the result of a *bona fide* dispute as to the coverage of the FLSA." *Duprey*, 30 F. Supp. 3d at 410 (quoting *O'Connor v. United States*, 308 F.3d 1233, 1242 (Fed. Cir. 2002)). In the absence of clear binding authority to the contrary, however, when there are "*bona fide* disputes as to liability and the costs and risks of proceeding on the merits" a plaintiff "is permitted to agree that . . . accepting a lesser amount than he ultimately could receive at trial is reasonable." *Id.* This settlement, like the one in *Duprey*, "is better viewed as a stipulation to an amount that fairly compensates [Plaintiff] for the release, given the specific risks of the case at bar, rather than an impermissible waiver under *Brooklyn Savings*." *Id.* The amount provided in consideration for the release is fair and reasonable.

### d. Attorneys' Fees

Next, the Settlement Agreement's provisions regarding attorneys' fees must be assessed for reasonableness. *Saman*, 2013 WL 2949047, at *6. In calculating an award of attorneys' fees, the Court first must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of

the prevailing market rates in the relevant community for the type of work for which he seeks an award" (internal citations omitted)). "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). In determining whether the lodestar results in a reasonable fee, this Court evaluates "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)." *Thompson*, 2002 WL 31777631, at *6 (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n.19 (citing *Johnson*, 488 F.2d at 717–19). However, the Supreme Court has noted (and experience awarding attorneys' fees has confirmed) that the subjective *Johnson* factors provide very little guidance and, in any event, that "'the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" *Perdue*, 559 U.S. at 551, 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 549, 566 (1986)).

An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v.*

8

*Stenson*, 465 U.S. 886, 890 n.11 (1984); *see Thompson v. HUD*, No. MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (same). In Appendix B to its Local Rules (D. Md. Jul. 2014, Dec. 2015 Supp.), available at http://www.mdd.uscourts.gov/local-rules, this Court has established rates that are presumptively reasonable for lodestar calculations. *See, e.g., Poole ex rei. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000). The billing rates listed for Plaintiff's two attorneys and the paralegal(s) are within the presumptively reasonable rates set forth in Appendix B of this Court's Local Rules. I find that these rates are reasonable.

As for the hours expended, the Joint Motion and Memorandum for Approval of Settlement Agreement submits detailed information listing the billable hours that Eguizabal's two attorneys and paralegal(s) spent for each stage of the litigation. Jt. Mot. & Mem. 6. The attorneys worked a total of 48.2 hours on this case and the paralegal(s) worked 11.7 hours. *Id*. The parties' did not address the *Johnson* factors; however counsel's experience, the genuine dispute in this case, and hours attributed to each stage of the litigation supports a finding that the number of hours expended were reasonable. Moreover, while Eguizabal's attorneys also noted costs incurred throughout the case including: $400 for filing fees and service fees of $260.00, such that fees and costs total $11,722.50, counsel seeks approval of attorneys' fees and costs in the reduced amount of $7,400, which is less than 65% of the total amount incurred. Further, the Agreement indicates that this amount is in addition to and not a part of the $10,000 to be paid to Eguizabal. Agreement ¶ 4(c). Taking into account the period of litigation of almost one year, which included discovery, preparation for an ADR session that was canceled, and settlement, I find that $7,400 for fees and costs is reasonable. Accordingly, I will approve the attorneys' fee award of $7,400.

## III. **<u>ORDER</u>**

Accordingly, it is this <u>9th</u> day of February, 2018, hereby ORDERED that:

1. The Joint Motion to Approve Settlement, ECF No. 43, IS GRANTED.

2. The Clerk is DIRECTED to CLOSE THE CASE.

/S/
Paul W. Grimm
United States District Judge

jml